JOSEPH WINSTON vs. DEXTER T. WALES.

Where evidence has been given, upon which a jury might find a verdict, its sufficiency should be submitted for the determination of the jury, and if it be excluded by the court it is error.

## APPEAL from St. Louis Court of Common Pleas.

MOREHEAD, for appellant.

1. It is contended that the defendant is liable to the plaintiff in the sum of $500, paid at Louis ille for the boat, the boat proving unseaworthy and being taken back.

2. The defendant is liable for damages on account of breach of contract in the sale of 1-4 of the boat to plaintiff after his purchase from Fine. In support of the last point see the case of Byrd vs Fox, 8 Mo. Rep. 574.

The instruction of the court below was in error,

1st. Because the jury had the right to judge as to the testimony for themselves, and were forced by the instruction to find against the plaintiff.

2. Because there was evidence to charge the defendant.

The evidence in the last point is, That Fine made a bill of sale to the defendant for the boat, and delivered him the possession and defendant then agreed to sell plaintiff 1-4 of the boat, and make him clerk of the boat for $1125—$700 of which was paid. This agreement was broken; he refused to comply and sold the boat

It is insisted that the defendant is liable on this breach of contract and that the instruction was wrong in disregarding it.

KNOX & WHITE, for appellee.

1st There was no evidence in the case that the defendant was owner of the steamboat Clermont on or before the 29th day of April, 1846, but there was positive evidence that he was not the owner of said boat, nor had defendant any interest in said boat at the time the five hundred dollars was paid by Winston to Beckwith. It further appears affirmatively that said Beckwith was the owner of the boat at the time the money was paid, and that the same was paid to Beckwith for his own use.

2. There is no legal evidence that Winston ever rendered services on said boat as clerk or otherwise after Wales became the owner.

3. The only pretended evidence to prove that Winston ever paid money on account of said boat, is a statement made by Winston to Wales in Fine's deposition, to the competency of which defendant's counsel excepted. This statement by the plaintiff of a fact within his own knowledge, and not from the nature of the transaction within the knowledge of the defendant, we submit is not evidence of the truth of the fact stated.

4th. If the plaintiff did expend money on said boat after the contract for the purchase made between Fine and Beckwith, and before the boat was del vered to Wales, and before said contract was rescinded, the defendant is not liable for such expenditures, as they were made for the benefit of Winston and Fine, and not for the benefit of Wales.

Judge BIRCH delivered the opinion of the court.

In the latter part of April, 1846, the defendant, then in St. Louis,

having heard from one Fine that he was going to Cincinnati to purchase a steamboat for the Missouri river trade, shewed him a letter from Captain Beckwith of Louisville, stating the size and capacity of a certain boat called the Clermont, which boat Beckwith wished the defendant to come on to Louisville and take possession of. Defendant thereupon asked Fine if that boat would suit him for the Missouri trade, to which Fine replied he thought not, but that on his way to Cincinnati, he would stop at Louisville and examine her. Defendant thereupon wrote by Fine to Beckwith, that any contract he might make with Fine, respecting price and payment, would be satisfactory to him (defendant.) Fine proceeded to Louisville, examined the boat, and agreed to take her at the price of four thousand five hundred dollars—Beckwith agreeing to do certain repairs, which he executed accordingly. Beckwith required five hundred dollars to be paid to him in cash, which was paid by Winston, who was present, and was one of the company who had projected and agreed upon the purchase of a boat at Cincinnati for the purpose already stated. This contract appears to have been consummated or ratified on the 4th day of May, 1846, at which time the defendant had reached Louisville, for although the testimony represents him as complaining that Beckwith had sold the boat too cheap, it seems that he executed an agreement of which the following is a copy :

"This agreement made this 4th day of May, 1846, between Elisha Fine and Dexter T. Wales, all of St. Louis, Missouri, sheweth that said Fine hath bought of Dexter T. Wales a certain steamboat Clermont, with all her tackle, furniture, &c., and has already paid five hundred dollars in cash on the same, and when a certain acceptance for $1000, dated at Louisville, May 4, at ten days, is paid, and the said Fine, on his arrival at St. Louis, gives the said Wales two good endorsed notes, at 3 and 6 months, for $1500 each, then the said Wales binds himself to give the said Fine a clear bill of sale of said steamboat Clermont and everything belonging to her.

Dated at Louisville, May 4, '46.

ELISHA FINE,     [SEAL.]<br>DEXTER T. WALES, [SEAL.]

Witness, JOSEPH WINSTON."

It cannot be doubted, nor is it pretended, but that the five hundred dollars herein acknowledged to be paid on the purchase from Wales, was the same which was paid by Winston a few days previously, as shown by a receipt therefor in these words:

Winston vs. Wales.

"*Louisville*, *April* 29, 1846. Rec'd of Joseph Winston five hundred dollars in part pay for purchase of steamboat Clermont, as per contract.                    JACOB BECKWITH."

Thus far it seems that Beckwith had, in some manner come into possession of a boat belonging to Wales, which he wished to surrender to him, but which Wales authorized him to sell to Fine, one of the associates of Winston for the purchase of a boat at Cincinnati, and which was sold to him accordingly. It also appears that Winston paid to Beckwith, as the supposed and indeed *accredited* agent of Wales, five hundred dollars on the purchase of the boat, that Wales was made acquainted with the fact and ratified it by acknowledging its receipt in a conditional bill of sale which he executed a few days afterwards. It is true, that notwithstanding all this, Captain Beckwith testifies that at the time he received the money from Winston the boat was his—but as this testimony is in apparent conflict with all the other facts and circumstances which have been spread upon the record, and upon which Winston and his associates had a right to rely, and upon which, under the express preliminary authority and guaranty of Wales, they had a right to act and apparently did act, we perceive no propriety, *in* such a suit as this, in permitting the defendant to interpose the testimony of his *agent* to stultify *himself*. For all the purposes necessary here to consider, the question is not whether Beckwith or Wales actually *owned* the boat, but as whose property did Wales induce Fine and Winston to examine and purchase her? It would seem that there could scarce be a contrariety of opinion when looking to the testimony upon that subject; and as the contract which was made between Wales and Fine was, a few days afterwards rescinded under such circumstances, and such an agreement as to Winston, as to entitle him to his present action, defendible only to the extent of such loss (if any) as it could be shewn he ought to bear on a resale of the property, it would seem that the judge below committed manifest error in instructing the jury that "there was no evidence before them to charge the defendant in this action." But for that instruction, the jury might very well have found that this, and other sums about which there was also some testimony, was money had and received, or paid for the use of the defendant. At all events, the question should have been left to the jury.

There is, however, an additional point of view, connected somewhat with the foregoing, which renders the instruction we are considering even more palpably erroneous. The contract, as has been already intimated, was rescinded, by its being agreed (after it was ascertained and decided by the inspectors that the boat was not strong enough for the

Missouri trade) that Wales should take her back, do the best he could with her, and that Winston and Fine would bear an equal proportion in any loss that might be sustained, either in running her or making sale of her—*he* (Wales) *rendering a correct and satisfactory account to Fine and Winston.* The boat being thereupon delivered to Wales, he proposed to Winston that as he had already paid the five hundred dollars alluded to, and (as Winston alleged) some two hundred dollars besides in the way of expenses, &c., he should retain an interest of one-fourth in the boat, and go upon her as clerk. Winston agreed to this, but when the witness returned from the Missouri eight or ten days afterwards, he found the boat laid up, and Wales objecting to receive Winston as clerk on the alleged ground that he was incompetent as a book-keeper. The boat was then taken charge of and run by Wales' brother, until winter, when she was sold.

Here Wales is again seen acknowledging the claim or interest of Winston (then amounting to some $700) and after agreeing, in recognition of it, to transfer him an interest in the boat, which should entitle him to a share in the profits and a clerkship besides, the next and the last that is shewn by the record, is his repudiation of that agreement, and the transfer of the boat, firstly to his brother, and finally to others, without rendering either to Fine or Winston a syllable of explanation, much less "the correct and satisfactory account" to which he had pledged himself. Unless all these circumstances can be made to wear a different aspect, it ought surely to be left to a jury to measure the damages of a citizen thus unjustly dealt by.

The judgment of the court of common pleas is therefore reversed, and the cause remanded.